UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARGARET KERNSTOCK,

                Plaintiff,                            Case No. 11-11851
                                                    Honorable Thomas L. Ludington

v.

UNITED STATES OF AMERICA,

                Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION FOR RECONSIDERATION AND RELIEF

      Plaintiff Margaret Kernstock's kidney failed after she smoked a pack of cigarettes every day for decades despite doctors' warnings to quit, and then checked herself out of a hospital against medical advice in January 2009. The cause of her subsequent renal failure was the blockage of one of her renal arteries, which prevented blood flow to the kidney.

      Approximately six months earlier, in August 2008, it was discovered that 80% of the renal artery leading to Plaintiff's left kidney was blocked. She contends that her treating physician, Dr. Eventure Bernardino, should have referred her to a specialist at that time so that her kidney could have been saved.[1] The government moved for summary judgment, and the Court agreed that Plaintiff had not demonstrated one of the elements of her *prima facie* case: specifically, that her doctor's failure to refer her to a specialist proximately caused her renal failure. This is because Plaintiff was seen by two such specialists between August 2008 and

---

[1] Plaintiff filed this medical malpractice action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1246(b), 2671–80. She alleges Dr. Bernardino breached the standard of care when he treated her at Health Delivery Systems, Inc. Dr. Bernardino and Health Delivery Systems are employees of the Public Health Service pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233 (g)–(n), and therefore this professional negligence claim is properly brought against Defendant United States of America.

January 2009 — both knew of the 80% occlusion — and both administered the same treatment Plaintiff's doctor had already recommended.

Plaintiff has now moved for reconsideration under Local Rule 7.1(h), for relief from the order and judgment under Federal Rule of Civil Procedure 60(b)(1) and (6), and to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Plaintiff's motion rests on her claim that the Court erred in not rendering a ruling on the motion to challenge Plaintiff's expert, Dr. Daniel Boyle: "[h]ad the Court considered the arguments and authority cited in Plaintiff's response to said motion, the Court would have been put on notice that its analysis as to Dr. Boyle's testimony was improper." Pl.'s Mot. 3, ECF No. 61. But no such ruling was necessary. Then, as now, even if Dr. Boyle's testimony is accepted, Plaintiff has not demonstrated with sufficient evidence that her kidney would not have failed if her doctor had referred her to a specialist. Plaintiff's motion for reconsideration will be denied.

# I

The full factual background is contained in the Court's February 26, 2013 Order. *See* Feb. 26, 2013 Op. & Order 2–6, ECF No. 59. Only the relevant facts for this order are set forth here.

From 2004 to 2009, Plaintiff's treating physician was Dr. Bernardino, a family physician. During each appointment over that time, Dr. Bernardino repeatedly counseled Plaintiff to stop smoking, as it was the most significant factor in the debilitating symptoms that afflicted her. She did not heed his advice.

In May 2008, Dr. Bernardino referred Plaintiff to the Michigan CardioVascular Institute (MCVI) to evaluate her report of pain in both legs after walking. On June 17, 2008, Plaintiff was seen by Dr. Alok Maheshwari, an interventional cardiologist at MCVI. During the appointment

Plaintiff confirmed that, despite years of counseling from Dr. Bernardino, she continued to smoke one pack of cigarettes every day.  Def.'s Mot. Summ. J. Ex. 24, ECF No. 46.

An ultrasound was conducted on Plaintiff's legs which suggested that both had blockages in the arteries.  So a CT angiogram was performed on June 25, 2008.  The results confirmed Dr. Maheshwari's suspicion and Dr. Bernardino's earlier assessment — Plaintiff had blocked arteries in both legs.  Additionally, there was an incidental note made of a high-grade stenosis in one of her kidney arteries.[2]

After reviewing the results, Dr. Maheshwari recommended Plaintiff undergo an abdominal angiogram, which he performed on August 13, 2008.  This second angiogram confirmed the findings of the CT angiogram: Plaintiff had severe disease in both leg arteries with nearly complete occlusion (blockage of the blood vessel).  Dr. Maheshwari also confirmed a blockage of about 80% of Plaintiff's left renal artery.[3]  Dr. Maheshwari determined that the renal artery blockage was not "clinically significant in any way."  Maheshwari Dep. 50, *attached as* Def.'s Mot. Summ. J. Ex. 20.  He also concluded that there was no additional treatment needed for the blocked renal artery: Dr. Bernardino had informed Plaintiff of her need to stop smoking, she was on a cholesterol-lowering medication, and she regularly took aspirin.  According to Dr. Maheshwari, everything that needed to be done to treat the blocked renal artery "was already being done."  *Id.* at 51.

Plaintiff had four appointments with Dr. Bernardino after her renal artery stenosis was discovered: October 14, 2008; November 4, 2008; December 2, 2008; and January 19, 2009.  Dr.

---

[2] According to the Merriam-Webster dictionary, stenosis is defined as "a narrowing or constriction of the diameter of a bodily passage or orifice."  Merriam-Webster.com, www.merriam-webster/dictionary/stenosis (last visited February 13, 2013).  Renal artery stenosis is the "narrowing of one or both renal arteries, so that renal function is impaired."  TheFreeDictionary.com, medical-dictionary.thefreedictionary.com/stenosis (last visited February 13, 2013).

[3] Despite this fact, Plaintiff's renal function remained normal as of August 12, 2008.

Bernardino's notes from the sessions do not indicate Plaintiff had been diagnosed with an 80% renal artery stenosis and he did not refer her to a specialist for additional treatment.[4]

On January 21, 2009 Plaintiff was suffering from dizziness, blurred vision, abdomen pain, and episodes of tingling on her left side and right arm. She called 911 and was taken to St. Mary's of Michigan's emergency room by ambulance. During Plaintiff's hospital stay, attending physicians noted the "80% stenosis of the left ostial renal artery." Def.'s Mot. Summ. J. Ex. 36, at 4. She was evaluated by Dr. Peter Fattal, an invasive cardiologist from MCVI. Dr. Fattal knew that Plaintiff's left renal artery was 80% blocked. He did not recommend any treatment for what he deemed "mild renal insufficiency." Def.'s Mot. Summ. J. Ex. 39.

Then, during the evening of January 22, 2009, Plaintiff "called and requested immediate discharge. . . . She insisted on discharge and agreed to sign discharge *against medical advice*." Def.'s Mot. Summ. J. Ex. 40, at 2. (emphasis added).

Plaintiff never returned for the follow-up visit scheduled with Dr. Bernardino after her discharge from the hospital, but instead transferred her care to AGES Senior Health Care. *See* Def.'s Mot. Summ. J. Ex. 41. Subsequent medical records report that on February 20, 2009, she underwent a bilateral renal angiogram. Def.'s Mot. Summ. J. Ex. 42. After the procedure, Plaintiff's attending physician reported that her "Left renal artery is 100% occluded. This is a new finding. Last year left renal artery was 80% stenosed." *Id*. The lack of blood flow to Plaintiff's left kidney caused it to fail.

## II

Local Rule 7.1 requires that a movant requesting reconsideration demonstrate a "palpable defect by which the courts and the parties and other persons entitled to be heard on the motion

---

[4] Although it is disputed whether Dr. Bernardino knew of the renal artery stenosis finding, and whether Plaintiff herself knew, for purposes of Defendant's motion for summary judgment, it was stipulated that Dr. Bernardino did know, and Plaintiff did not. *See* Def.'s Mot. Summ. J. 5 n.3; Def.'s Mot. Summ. J. 6 n.4.

have been misled." E.D. Mich. LR 7.1(h)(3). A motion pursuant to Federal Rule of Civil Procedure 60 requires a showing of "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief."[5] Fed. R. Civ. P. 60(b)(1), (6). A court may grant a Rule 59(e) motion only to (1) correct a clear error of law, (2) account for newly discovered evidence, (3) accommodate an intervening change in the controlling law, or (4) otherwise prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

## III

In deciding Plaintiff's medical malpractice claim, the Court must apply Michigan Law. *See Sellers v. United States*, 870 F.2d 1098, 1101 (6th Cir. 1989) (courts addressing medical malpractice claims under the FTCA must follow "the law of the place where the act or omission occurred.") (quoting 28 U.S.C. § 1346(b)).

In *Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296 (Mich. 2004), the Supreme Court of Michigan stated:

> In order to establish a cause of action for medical malpractice, a plaintiff must establish four elements: (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care.

*Id.* at 308 (citing *Weymers v. Khera*, 563 N.W.2d 647, 652 (Mich. 1997)); *see also* Mich. Comp. Laws § 600.2912. To establish proximate cause, the plaintiff must prove "the existence of both cause in fact and legal cause." *Weymers*, 563 N.W.2d at 652 (citing *Skinner v. Square D Co.*, 526 N.W.2d 457, 479 (Mich. 1994)).

---

[5] Subsection (6) of Rule 60(b) "applies only in exceptional and extraordinary circumstances which are not addressed by the first five subsections of Rule 60(b)". *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001). Such circumstances are found in "unusual and extreme situations where principles of equity *mandate* relief." *Id.* (emphasis in original) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).

Cause in fact requires "substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Weymers*, 563 N.W.2d at 652 (quoting *Skinner*, 526 N.W.2d at 479). An "act or omission is a cause in fact of an injury only if the injury could not have occurred without (or 'but for') that act or omission." *Craig*, 684 N.W.2d at 309. The Michigan Supreme Court has cautioned that "a plaintiff cannot satisfy this burden by showing only that the defendant *may* have caused his injuries." *Id*. (emphasis in original). So while "the evidence need not negate all other possible causes," the Michigan Supreme Court "has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Id*. (citing *Skinner*, 526 N.W.2d at 480). Plaintiff was unable to satisfy this requirement when faced with summary judgment, and she is unable to satisfy this requirement now. Her motion will be denied.

## A

Plaintiff spends the majority of her motion addressing whether the testimony of her expert, Dr. Boyle (a board-certified physician in family practice), is admissible under Federal Rule of Evidence 702. Such an analysis is of little significance to the issues framed by Defendant's motion for summary judgment. Noted on numerous occasions, whether Dr. Boyle is qualified to testify as an expert was not a deciding factor in addressing the motion. *See* Feb. 26, 2013 Op. & Order 9 n.6; 9–10 n.7. Instead, the analysis rested upon Plaintiff's inability to demonstrate proximate cause, even with the benefit of Dr. Boyle's opinions.

Dr. Boyle testified that Plaintiff "lost a kidney" because of what he believes "was a deviation from the standard of care on the part of Dr. Bernardino." Boyle Dep. 9. Dr. Boyle opined that Dr. Bernardino breached the standard of care when he received the results of the imaging study demonstrating an 80% stenosis of the renal artery but did not "make an

appropriate referral in order that the patient's renal function could be preserved, that's the first and the major breach." *Id*. at 25–26.[6]

Again, Plaintiff cannot satisfy her burden of demonstrating cause in fact by showing "only that the defendant *may*" be the cause of her injuries. *Craig*, 684 N.W.2d at 309 (emphasis in original). Instead, Michigan law requires more; that she "exclude other reasonable hypotheses with a fair amount of certainty." *Id*. (citing *Skinner*, 526 N.W.2d at 480). So even if Dr. Boyle's expert opinions are credited — which they were — they do not rule out the reasonable likelihood that if Dr. Barnardino had referred Plaintiff to a specialist, that specialist would not have treated Plaintiff any differently.[7]

Supporting this conclusion are both Dr. Maheshwari and Dr. Fattal. Dr. Maheshwari is just the type of specialist Dr. Boyle believes Plaintiff should have been referred to: an interventional cardiologist. When Dr. Maheshwari learned of the 80% renal-artery occlusion in August 2008, he did not take Plaintiff into surgery to install a stent. He did not prescribe any treatment in addition to Dr. Bernardino's treatment. In fact, he testified that everything that needed to be done to treat the blocked renal artery "was already being done." Maheshwari Dep. 51. Dr. Fattal is also the type of specialist Dr. Boyle believes Plaintiff should have been referred to; he is an invasive cardiologist. He examined Plaintiff in January 2009 — and was aware that she had an 80% blockage in her renal artery. He also did not reconsider Dr. Bernardino's treatment plan, prescribing no additional treatment.

Accordingly, Plaintiff cannot satisfy her burden of demonstrating "substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the

---

[6] Plaintiff argued for an additional breach of care based on medication Dr. Bernardino prescribed, but Dr. Boyle himself testified the medication did not cause the renal failure. *See* Feb. 26, 2013 Op. & Order 10–12. Further, Plaintiff's current motion makes no mention of this issue.

[7] This likelihood is all the more reasonable in light of the fact that two specialists reviewed Plaintiff's records, noted she had an 80% blockage in her left renal artery, and yet prescribed no additional treatment.

plaintiff's injuries would not have occurred." *Weymers*, 563 N.W.2d at 652 (quoting *Skinner*, 526 N.W.2d at 479). This is because even if Dr. Bernardino had referred Plaintiff to a specialist, doctors like Maheshwari and Fattal, there is no evidence to believe that specialist would have done anything beyond what had already been prescribed. The evidence to support this conclusion, of course, is Dr. Maheshwari's testimony that Dr. Bernardino had done everything right, and the fact that both Dr. Maheshwari and Dr. Fattal treated Plaintiff's renal stenosis by doing nothing in addition to what Dr. Bernardino had prescribed.

Plaintiff argues that "neither physician denied the availability of stenting and neither physician testified that other physicians from their respective specialties would not have considered and chosen the option to treat the condition with a stent." Pl.'s Mot. 7. This is true. In fact, no one has denied that stenting might have been used to treat Plaintiff's condition. But this does not change the fact that neither specialist that examined Plaintiff prescribed such treatment. It is Plaintiff's burden to provide evidence to "exclude other reasonable hypothesis with a fair amount of certainty." *Craig*, 684 N.W.2d at 309 (citing *Skinner*, 526 N.W.2d at 480). She has not produced any evidence to exclude the reasonable possibility that had Dr. Bernardino referred her to a specialist, that specialist would not have stented her artery. She has only provided the opinion of Dr. Boyle, not a specialist, who opined that stenting was viable and would have saved Plaintiff's kidney. Even crediting this opinion, Plaintiff has not established that, more likely than not, the failure to refer her to a specialist caused her kidney to fail.

This conclusion — that Plaintiff cannot demonstrate proximate cause — remains despite reconsideration of the record. Therefore, Plaintiff has not shown a palpable defect by which the court and the parties have been misled, and her motion fails under Local Rule 7.1(h). Likewise, there was no mistake, inadvertence, surprise, or excusable neglect, as required by Rule 60(b)(1),

nor any exceptional and extraordinary circumstances mandating relief under Rule 60(b)(6). Finally, there is no error of law, newly discovered evidence, change in controlling law, or other manifest injustice that would support an amendment of the order or judgment under Rule 59(e).

**B**

Plaintiff offers another possibility: "In the event the Court . . . is unwilling to reconsider its ruling in light of the preceding argument, the plaintiff respectfully requests an opportunity to submit a sworn affidavit from a vascular surgeon who will demonstrate that stenting was an option for the Plaintiff during the period of time identified Dr. Boyle [sic] and which would have saved the kidney at issue." Pl.'s Mot. 8–9.

Plaintiff continues to miss the point. Dr. Boyle's opinion that stenting was an option and would have saved the kidney has already been credited. Even with that opinion, Plaintiff has not excluded the reasonable possibility that a specialist would not have attempted such a treatment, and instead concurred with Dr. Bernardino's analysis. This bears repeating: it is Plaintiff's burden to demonstrate sufficient evidence to "exclude other reasonable hypotheses with a fair amount of certainty." *Craig*, 684 N.W.2d at 309 (citing *Skinner*, 526 N.W.2d at 480). This she cannot do with one physician's opinion that stenting would have saved the kidney. She must demonstrate a reasonable likelihood that stenting would have been performed by any specialist she was referred to.

Further, Local Rule 7.1 and Federal Rules of Civil Procedure 59 and 60 do not provide for the relief Plaintiff requests: submitting new evidence in light of a court's ruling on summary judgment. Local Rule 7.1(h) provides for reconsideration only where the movant can demonstrate "that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). An additional expert declaring that stenting was an option would be of no

use to Plaintiff.  This opinion, no different that Dr. Boyle's, would not exclude the reasonable possibility that a specialist would not have pursued such a treatment plan.

Likewise, Rules 59 and 60 offer no support.  Rule 59(e) allows a party to direct a court to newly discovered material evidence only when that evidence was "previously unavailable." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).  That is obviously not the case here; Plaintiff could have offered any expert reports she wanted prior to the deadline for expert disclosures.  She chose to rely exclusively upon Dr. Boyle.  While Rule 60(b)(2) provides that a party may move for relief from judgment based on "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), Plaintiff brings her motion under Rule 60(b)(1) and (6), not subsection 2.  Thus, there are no grounds for Plaintiff to offer new evidence at this late stage; and even if there were, it would not change the Court's disposition.  Plaintiff cannot exclude the possibility that had Dr. Bernardino referred her to a specialist, nothing different would have been done.

**IV**

Accordingly, it is **ORDERED** that Plaintiff's motion for reconsideration and relief, ECF No. 61, is **DENIED**.

Dated: May 9, 2013                                    s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2013.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS